UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
OSCAR RODRIGO SILVA RUEDA,                                      :
                                                               :
                                           Petitioner,         :
                                                               :                    26-CV-2977 (VSB)
                         -against-                              :
                                                               :                    **OPINION & ORDER**
LAWRENCE CATLETTI, Colonel, Orange                             :
County Correctional Facility, *et al.*,                        :
                                                               :
                                           Respondents.  :
                                                               :
-------------------------------------------------------------- X

Appearances:

Ilana Haramati
Meister Seelig & Schuster LLP
New York, NY
*Counsel for Petitioner*

Janet Lynne Guyon
U.S. Attorney's Office, Department of Justice, SDNY
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

Before me is the petition of Oscar Rodrigo Silva Rueda ("Silva Rueda" or "Petitioner")

for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the lawfulness of his detention

by Immigration and Customs Enforcement ("ICE") and seeking an order directing the

Government to immediately release Petitioner from custody.  (Doc. 3 ("Petition" or "Pet.").)

Because I find that the Government detained Petitioner pursuant to 8 U.S.C. § 1226 and that his

detention violated his due process rights, the Petition is GRANTED, and the Government is

ordered to immediately release Petitioner from custody.

## I.    Factual and Procedural Background

Petitioner is a 35-year-old citizen of Ecuador.  (Doc. 8-1 at 6.)  Petitioner arrived in the United States with his family, including his 2 minor children, in October 2023.  (Pet. ¶ 3; Doc. 12 at ¶ 6.)  Petitioner, his wife, and 2 children, have asylum applications pending.  (Pet. ¶¶ 2, 5, 27.)  Prior to his arrest, Petitioner was steadily employed in a grocery store, (*id.* ¶¶ 3, 30), and lived in Queens with his family, (*id.* ¶¶ 3, 26, 29–30).

On October 16, 2023, Petitioner was released on his own recognizance in Yuma, Arizona and was enrolled in the Alternative to Detention program and was required to use an application to check in with ICE using his mobile device.  (Doc. 12 ¶¶ 8–9; Doc. 8-2 (Order of Release on Recognizance ("OREC")).)  On March 11 and March 12, 2025, Petitioner told ICE that the application he used to check in electronically was not functioning properly.  (Doc. 12 ¶ 15.)  ICE advised Petitioner to report to ICE's New York Field Office on March 13, 2025 with the device, and Petitioner reported as requested.  (*Id.*)  On March 13, 2025, Petitioner's next in-person check-in was scheduled for March 12, 2026.  (*Id.* ¶ 16; *see also* Doc. 11-1.)

On January 5, 2026, the New York Police Department arrested and charged Petitioner with:  (1) strangulation in the second degree, in violation of New York Penal Law ("NYPL") § 121.12; and (2) assault in the third degree, in violation of NYPL § 120.00.  (*See* Doc. 8-3; Doc. 8-4.)  Petitioner's "arrest resulted in dismissal of the criminal charges, and a plea to the non-criminal violation of disorderly conduct pursuant to [NYPL] § 240.20."  (Doc. 10 at 1.)  On March 9, 2026, an order of protection was issued against Petitioner in protection of his wife, pursuant to his conviction for disorderly conduct.  (Doc. 8-6 at 1.)  The order of protection remains in effect through March 8, 2028.[1]  (*See id.*)

---

[1] During the April 15, 2026 initial conference in this matter, Petitioner's counsel stated that she spoke to Petitioner's immigration counsel, who informed her that the order of protection is no longer in effect because the complainant

On March 13, 2026, Petitioner appeared for his check-in appointment.  (Pet. ¶ 27.)[2] Petitioner believed that he was summoned "to turn in a cellular telephone to ICE that he had been using to comply with his check-in requirements," (*id.*), although it appears that this appearance was scheduled at Petitioner's prior check-in appointment on March 13, 2025, (Doc. 11 at 1; Doc. 11-1).  Indeed, Petitioner asserts that he complied with all previous check-ins, (Pet. ¶¶ 2, 27, 30), and the Government does not indicate otherwise, (*see* Doc. 11 at 1 ("[Petitioner was] told to report in person on October 23, 2023, which he did. . . . He reported again on November 25, 2024, when he was told to next report on November 25, 2025. [] On March 11, 2025 and March 12, 2025, he told ICE that the ATD device (phone) was not working. []  ICE advised him to report to the New York Field Office on March 13, 2025 with the device, which he did. []  At that time, on March 13, 2025, his next in-person check-in was scheduled for March 12, 2026.")).  When Petitioner attended the appointment on March 13, 2026, he was detained without a hearing or an individualized custodial determination.  (Pet. ¶¶ 2, 12, 27; *see* Doc. 12 ¶ 21 ("On March 13, 2026, Petitioner appeared for his scheduled check-in at the ICE office.  He was advised that his OREC was cancelled per the ERO NYC Assistant Field Office Director for violating the terms of his release, and that he would be taken into custody, pursuant to a Warrant for Arrest, Form I-200.").)  The Government asserts that Petitioner was detained during his check-in on March 13, 2026 because "systems checks showed that Petitioner had been arrested for strangulation and assault" and "ICE advised Petitioner that his OREC was canceled for violating the terms of his release and that he would be detained." (Doc. 11 at 2.)  On March 13, 2026, Petitioner was arrested pursuant to a warrant, (Doc. 11-3 at 3), and has been detained in

decided not to pursue the charges any further and the charges were wrapped up with a disorderly conduct violation.

[2] Petitioner appears to have been required to check in on March 12, 2026, although he appeared a day late on March 13, 2026.  (Doc. 11 at 1 n.1.)

Orange County Correctional Facility ever since, (Pet. ¶¶ 1–2, 12, 20). Petitioner has a hearing on the merits of his removal case in Immigration Court on May 6, 2026. (Doc. 12 ¶ 28.)

On April 10, 2026, Petitioner filed the Petition, asserting that he was detained without an individualized custodial determination in violation of 8 U.S.C. § 1226. (*See generally* Pet.) On the same day, I issued an Order to Show Cause concerning the Petition. (Doc. 4.) The order enjoined Respondents from transferring Petitioner out of the country or the New York City metropolitan area and directed Respondents to file a letter by April 14, 2026 indicating: (1) under what statutory provision Petitioner is being detained; (2) whether Petitioner was located in the Southern District of New York at the time that the Petition was filed, as Petitioner alleges; and (3) whether this case is distinguishable from my decisions in *Sidqui v. Almodovar*, No. 25-CV-9349, 2026 WL 251929 (S.D.N.Y. Jan. 30, 2026), *Han v. Noem*, No. 25-CV-10753, 2026 WL 322963 (S.D.N.Y. Feb. 6, 2026), and the majority of cases in this District that have held that 8 U.S.C. § 1226(a), or the discretionary detention statute, applies to noncitizens currently present in the country rather than the mandatory detention statute of 8 U.S.C. § 1225(b). (*Id.*)

On April 14, 2026, the Government filed a letter in response to the Order to Show Cause, agreeing that this case is not distinguishable from my decisions in *Sidqui* and *Han*, indicating that venue is proper, but requesting that if I granted the Petition that I direct that a bond hearing be held before an immigration judge rather than releasing Petitioner. (Doc. 8.) On April 15, 2026, I held an initial telephone conference, during which I asked questions, requested letters from the parties in response to those outstanding questions, (*see* Doc. 9), and stated that I would render a decision based upon the Petition, the Government's April 14, 2026 letter, and the parties' forthcoming letters in response to the questions I asked during the conference.

On April 24, 2026, Petitioner and Respondents filed letters in response to my April 15, 2026 order requesting certain information.  (Docs. 10–12.)  On April 27, 2026, Petitioner filed a reply to the Government's April 24, 2026 filing.  (Doc. 13.)  On April 30, 2026, Petitioner filed a letter alerting me of the Second Circuit's decision in *Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044 (2d Cir. Apr. 28, 2026), issued earlier that week.  (Doc. 14.)

## II.      **Legal Standard**

Silva Rueda brings his Petition pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'"  *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention."  *Lopez v. Sessions*, No. 18-CV-04189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## III.      **Discussion**

The Government concedes "[t]his case is not materially distinguishable" from my previous decisions in *Sidqui*, 2026 WL 251929 and *Han*, 2026 WL 322963, and the majority of cases in this District that have held that 8 U.S.C. § 1226(a), or the discretionary detention statute, applies to noncitizens currently present in the country rather than the mandatory detention statute

of 8 U.S.C. § 1225(b).  (Doc. 8 at 1.)  The Government also acknowledges that my previous decisions in *Sidqui* and *Han* "would control the result in this case if [I] adhere[] to those prior decisions."  (*Id.* at 1–2.)  Thus, "while reserving all rights, including the right to appeal, and to conserve judicial and party resources while expediting [my] consideration of this case, the Government is content with relying on, and incorporates by reference, the legal arguments it presented in *Han*."  (*Id.* at 2.)

After the parties completed briefing in this case, the Second Circuit issued a decision holding that "Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter."  *Cunha*, 2026 WL 1146044, at *2. *Cunha* is binding precedent and controls here.  Thus, for the reasons I previously stated in *Han*, 2026 WL 322963, at *5–7, and the reasons stated in the Second Circuit's recent decision in *Cunha*, 2026 WL 1146044, I conclude that Silva Rueda, who has been living in the United States since 2023 and was detained at 26 Federal Plaza, is not subject to mandatory detention under 8 U.S.C. § 1225(b), and is instead detained under the discretionary provision of § 1226(a).

In reaching this conclusion, I join the "overwhelming majority of opinions in this District and others across the country [that] have held that § 1226, not § 1225, governs the process of arresting and detaining noncitizens who are already present in the United States," *Han*, 2026 WL 322963, at *4 (collecting cases), and now, the Second Circuit, *Cunha*, 2026 WL 1146044, at *2.[3] "Section 1225(b)(2) [] applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and

---

[3] Indeed, "over 370 district judges across the Nation [] (as of mid-February 2026)," or "over ninety percent of district court judges," have "rejected the government's position."  *Cunha*, 2026 WL 1146044, at *4.

authorization." *Id.* at *6.  Accordingly, "although Petitioner is an applicant for admission under the statutory definition because he is present in the country and has never been admitted, it simply cannot be said that he is 'seeking admission,' as he is not requesting lawful entry into the United States." *Id.*  In other words, *"*Section 1225(b)(2)(A) applies to those noncitizens who present themselves at a port of entry for admission, or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'" *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107, 140 (2020))); *see also Ipina Hernandez v. Genalo*, No. 26-CV-137, 2026 WL 507739, at *5 (S.D.N.Y. Feb. 22, 2026) ("Section 1225(b)(2) applies only to noncitizens actively 'seeking admission' to the United States, and not to individuals . . . who have already entered and have been residing in the country, because [petitioner] can't go into a place where he already is." (internal quotation marks omitted and alterations adopted)).  "Therefore, because Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to Petitioner." *Cunha*, 2026 WL 1146044, at *6.

Having determined that Silva Rueda is detained pursuant to § 1226(a), I conclude that his detention by the Government, without any individualized consideration, violates his due process rights.  Section 1226(a) requires that the Government make an individualized determination based on (1) whether the noncitizen is a "danger to property or persons" and (2) whether the noncitizen is "likely to appear for any future proceeding" before detaining him.  8 C.F.R. § 1236.1(c)(8).  Here, "there is nothing to suggest that DHS exercised any discretion *at all* in detaining" Silva Rueda.  *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) (emphasis in original).  While the Government asserts that Petitioner's charges, incurred on January 5, 2026, were the basis to revoke Petitioner's OREC and for Petitioner's detention, (Doc.

7

8 at 2; Doc. 11 at 1–2), there is no evidence in the record that an individualized determination was made before detaining Petitioner under § 1226(a). (*See* Doc. 11-3 (March 13, 2026 arrest warrant not evincing any individualized exercise of discretion); Doc. 12 at ¶ 21 (Petitioner "was advised that his OREC was cancelled per the ERO NYC Assistant Field Office Director for violating the terms of his release, and that he would be taken into custody, pursuant to a Warrant for Arrest").) Indeed, following Petitioner's arrest, on January 6, 2026, ICE lodged a detainer with Queens Central Booking, which was ultimately not honored, (Doc. 12 at ¶ 19), and "[w]hile ICE became aware of Petitioner's arrest on [January 6, 2026,] they did not seek to re-detain Petitioner then . . . until he voluntarily appeared at" 26 Federal Plaza, *Sidqui*, 2026 WL 251929, at \*14 (internal quotation marks omitted) (holding that the petitioner was detained without any individualized assessment because "Petitioner was arrested . . . over seven months after he was initially arrested by the New York Police Department . . . despite the Government's conceded knowledge of . . . the criminal charges"). The Government took no further action to arrest Petitioner until his routine check in two months later.

The Government's stray reference in its letter to "a targeted decision to revoke Petitioner's OREC and take him into custody," (Doc. 8 at 2), without even explaining what that "targeted decision" was based on, does not evidence any individualized discretion exercised by ICE in advance of Petitioner's detention, as required by law. *See Huang v. Genalo*, No. 26-CV-2975, 2026 WL 1091194, at \*3 (S.D.N.Y. Apr. 22, 2026) ("The Government's stray reference in its letter brief to a targeted decision to revoke Petitioner's OREC and take him into custody following his arrest on gambling charges, which violated the conditions of his release at the border, does not evidence any individualized discretion exercised by ICE in advance of Petitioner's detention.") (internal quotation marks and citation omitted). Moreover, the

Government does not claim that Petitioner is a danger to the community.  Even if the Government did attempt to argue that Petitioner is a danger to the community because of the disorderly conduct violation, such an argument would fail.  *See Ipina Hernandez*, 2026 WL 507739, at *6 ("The March 30, 2025 charges were misdemeanors, a violation, and an infraction related to a vehicular stop . . . and do not on their face suggest that Petitioner presents any danger to the community."); *see also Rueda Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025) ("The Court cannot credit Respondents' new position as to the basis for [Petitioner's] detention, which was adopted *post hoc* and raised for the first time in this litigation." (citing *Lopez Benitez*, 795 F. Supp. 3d at 486)).  Additionally, that Petitioner's "arrest resulted in dismissal of the criminal charges, and a plea to the non-criminal violation of disorderly conduct," (Doc. 10 at 1), further supports the conclusion that Petitioner is not a danger to the community.

Accordingly, Petitioner's detention violates his due process rights.  *See Han*, 2026 WL 322963, at *7 (determining that the petitioner's due process rights were violated where there was no evidence of an individualized determination prior to detaining the petitioner); *Tejeda-Mata v. Francis*, No. 26-CV-658, 2026 WL 221276, at *2 (S.D.N.Y. Jan. 28, 2026) ("Respondents have violated th[e] fundamental mandate [in the Due Process Clause], as Petitioner has been detained without notice or an opportunity to be heard.  The remedy for this violation is release from custody."); *Tumba Huamani v. Francis*, 813 F. Supp. 3d 394, 407 (S.D.N.Y. 2025) (determining that the petitioner's due process rights were violated because she was detained "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond" (internal quotation marks omitted)).

Finally, I decline the Government's request that I "order a bond hearing before an immigration judge" if I grant the Petition.  (Doc. 8 at 2.)  As explained above, there is no evidence that ICE made an individualized determination before detaining Petitioner under § 1226(a).  "[A] bond hearing [cannot] retrospectively cure the due process violation, which derived from [Petitioner's] unlawful arrest and detention without the statutorily required exercise of discretion."  *Yao v. Almodovar*, 813 F. Supp. 3d 461, 476–77 (S.D.N.Y. 2025) (citing *Tumba Huamani*, 813 F. Supp. at 404–07); *see also Ambroladze v. Maldonado*, 26-CV-00474, 2026 WL 280182, at *3 (E.D.N.Y. Feb. 3, 2026) ("[B]ecause the 'typical remedy' for 'unlawful executive detention' is 'of course, release,' the government's ongoing detention of Petitioner, in the face of yet another complete failure of process, entitles him to immediate release." (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008))).  "[T]he harm began when Petitioner was detained without process and continues with each day he remains in custody."  *Han*, 2026 WL 322963, at *8.  Thus, the Government must immediately release Silva Rueda from detention.

## IV.    Conclusion

Therefore, the Petition for a writ of habeas corpus is GRANTED.

Respondents are hereby ORDERED to immediately release Petitioner from custody, to certify compliance with this order by filing an entry on the docket no later than 5:00 p.m. on **May 4, 2026**, and to notify Petitioner's counsel of where and when Petitioner will be released.

 IT IS FURTHER ORDERED that Petitioner "shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a)."  *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 495 (E.D.N.Y. 2025).  *Cf. Rueda Torres*, 2025 WL 3168759, at *6.

10

IT IS FURTHER ORDERED that the Government is ENJOINED from denying bond to Petitioner in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b) and from invoking in that proceeding the automatic stay provision at 8 C.F.R. § 1003.19(i)(2), *Rueda Torres*, 2025 WL 3168759, at *6, absent a change in controlling law.

Respondents did not address Petitioner's request for attorney's fees and costs pursuant to the Equal Access to Justice Act as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412 in their letter, (*see* Doc. 8).  Thus, if Petitioner still intends on seeking such relief, Petitioner may file a status letter proposing a briefing schedule for any application for attorneys' fees and costs by **July 2, 2026**.

SO ORDERED.

Dated:    May 1, 2026
          New York, New York

Vernon S. Broderick
United States District Judge

11